UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

YOSVANY CABRERA PRIETO,

       Petitioner,

    v.

WARDEN, FLORIDA SOFT SIDE
SOUTH,  U.S. ATTORNEY
GENERAL,

       Respondents.

Case No. 2:26-cv-1253-KCD-NPM

---

## <u>ORDER</u>

Petitioner Yosvany Cabrera Prieto has filed a pro se habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement. (Doc. 1.)[1] He claims that his continued imprisonment violates the Fifth Amendment as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). Respondents oppose the petition. (Doc. 8.) For the reasons below, the petition is **GRANTED IN PART**.

## I. Background

Prieto is a citizen of Cuba. He illegally entered the United States, was ordered removed in 2013, and then placed on an order of supervision. (Doc. 8-1 at 1, 3.) On September 24, 2025, following an arrest for possession of crystal

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

meth, ICE revoked his supervision and detained him. (*Id.*) He has remained in immigration custody ever since.

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## III. Discussion

The Government first argues that we lack jurisdiction to address Prieto's claims under 8 U.S.C. § 1252(g) and § 1252(b)(9). This Court has already addressed these precise arguments and rejected them for the same reasons they fail today. *See Obando-Vargas v. Assistant Dir.*, No. 2:26-CV-265-KCD-NPM, 2026 WL 796804, at *1-2 (M.D. Fla. Mar. 23, 2026). The Court thus turns to the merits.

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, the government has 90 days to

effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. at 659. And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Applied here, Prieto satisfies the initial temporal requirement. ICE took him into custody nearly eight months ago. Because the six-month period

for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Prieto has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. He does so by pointing to a stubborn diplomatic reality: he is a citizen of Cuba, and Cuba is currently embroiled in political conflict with the United States. (Doc. 1 at 7.) Such facts are enough given the length of time Prieto has been in the United States and not removed to date.

The burden thus shifts to the Government to rebut Prieto's showing, but they fail to do so. *Akinwale*, 287 F.3d at 1052. This outcome should come as no surprise—the record offers no documents, no diplomatic agreements, and no concrete evidence that Prieto will be removed in the near future. (Doc. 8.) Instead, the Government simply claims that it has requested documents from ICE as to a removal plan but received nothing. (Doc. 8 at 8 n.1.) Because the Government offers nothing concrete to suggest removal is more likely now than it was months (and years) ago, Prieto must be released.

It is easy to see why this outcome might cause unease given Prieto's most recent arrest. Yet, because the Government is completely unable to effectuate his removal, Prieto has been allowed to live in this country for over ten years without facing the ultimate immigration consequence. But this Court is bound by the law. And the law is clear: the Government cannot lock

individuals in a cell indefinitely as a workaround for a stalled deportation process, nor can it use indefinite detention simply to placate popular opinion. *Zadvydas*, 533 U.S. at 659. The Constitution cannot be ignored just because the facts are frustrating. If there is a flaw in a system that leaves convicted criminals in a state of perpetual immigration limbo, the remedy lies in the halls of Congress or with the Executive branch—not with a federal judge.

## IV. Conclusion

Because the Government cannot show any real prospect of deportation, the Court finds no significant likelihood that Prieto will be removed in the reasonably foreseeable future. He is therefore entitled to release from ICE custody under *Zadvydas*. But that release is not a free pass—he remains subject to the strict conditions of his Order of Supervision. To the extent Prieto's pro se petition raised any other claims, they are denied. He is entitled to no other relief from the facts presented.

Accordingly, it is **ORDERED:**

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED** as set forth above.

2. Respondents are ordered to **RELEASE** Petitioner Yosvany Cabrera Prieto from custody within 48 hours of this Order under the prior conditions of supervision, which Petitioner must continue to comply with.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**ORDERED** in Fort Myers, Florida on May 13, 2026.

Kyle C. Dudek
United States District Judge